DECISION
I. Background
This case arises out of former Oneida Police Chief Rick Cornelius’ termination from employment by the Oneida Police Commission. The two reasons for termination involved Mr. Cornelius’ failure to ethically handle money he wrongly received in his bank account and questionable testimony given by Mr. Cornelius before the Oneida Personnel Commission. After lengthy litigation and a remand for a supplemental hearing, the Police Commission upheld its original decision. We affirm.

A. Factual background

The Oneida Police Commission’s decision to terminate Mr. Cornelius’ employment rests on two grounds. First, in 2000, Mr. Cornelius mistakenly received a deposit to his bank account of approximately $3,000 belonging to Patrick and Brenda Buckley. Even though he was aware of the money in his account he said nothing and when confronted by the Buckleys, he refused to return the money to them. Second, in 2004, Mr. Cornelius gave testimony in an employment matter before the Oneida Personnel Commission. In its decision, the Oneida Personnel Commission judged Mr, Cornelius’ testimony to be “false and misleading.” Below we review the relevant facts of each incident.

1. The Buckley incident.

The Buckleys are small business owners and Mr. Cornelius would occasionally make bank deposits for them. Although it is not in the record, it is common knowledge in the community that Mr. Cornelius is Brenda Buckley’s brother-in-law. On May 3, 2000 just over $3,000 belonging to the Buckley’s was wrongfully deposited into Mr. Cornelius’ account. It is undisputed Mr. Cornelius was not responsible for the error. However, after he became aware of it around June 2000, Mr. Cornelius did nothing to correct the situation claiming at the hearing that he was unsure to whom the money belonged. The Buck-leys were not aware of the situation until February 2002. They requested Mr. Cornelius to correct the matter. He refused, claiming later he was unsure to whom the funds belonged. The investment firm responsible for the error took action on March 1, 2002 by deducting the money *390 from Mr. Cornelius’ account and giving it to the Buckleys.
Before the Buckleys received the money, they complained to law enforcement officials. Upon receiving the Buckley’s complaint, the Brown County District Attorney referred the matter to the Waush-ara County District Attorney for investigation. Although the Waushara County District Attorney refused to prosecute for other reasons, he described Mr. Cornelius’ conduct as “outrageous.” He went on to say that “the actions displayed by Mr. Cornelius with respect to this situation fall short of the expectations that would be maintained for an ordinary citizen ... [sjueh conduct demonstrated by an experienced detective and his spouse is bordering on abominable.”

2. The Oneida, Personnel Commission testimony.

The second issue upon which the Police Commission based its decision to terminate Mr. Cornelius’ employment was the Oneida Personnel Commission’s view of Mr. Cornelius’s testimony at an employment grievance hearing. John Powless III was terminated from employment for having unauthorized possession of property belonging to the employer. Mr. Cornelius became involved when he received a claim from Arlouine Bain that Mr. Powless may possess tribal property such as a riding lawnmower without authorization. Ms. Bain was Mr. Powless’ supervisor. According to the Oneida Personnel Commission decision, it was clear the lawnmower was located elsewhere and that Ms. Bain, for some reason, pointed Mr. Cornelius towards Mr. Powless’ residence. Mr. Cornelius investigated and discovered Mr. Powless did not have the riding lawnmower. However, Mr. Powless did have a bicycle belonging to his employer. When this information was provided to the employer, Mr. Powless’ employment was terminated.
Mr. Powless grieved the matter and the Personnel Commission held a hearing on August 24, 2004. Mr. Cornelius gave the testimony at issue at this hearing. Here is what the Oneida Personnel Commission said about Mr. Cornelius’s testimony:
The testimony provided by ... Chief of Police, Rick Cornelius, lacked credibility, and appeared deceitful. This lack of believable testimony from the Oneida Tribe’s Chief of Police compelled this Commission to utilize his testimony in a different manner normally used, when a witness is telling the truth. There were incongruities consistently throughout his testimony.... Even throughout all the false testimony this Commission was able to decipher the truth in regards to the intentions of the ... Chief of Police .... Common sense and lack of reasoning moves this Commission to believe that statements made by ... the Chief of Police, Rick Cornelius, were false and misleading.
Powless v. Bain, 03-TER-018 (11/5/2004) at pp. 9-10.
The Personnel Commission eventually reinstated Mr. Powless’ employment.

B. Procedural history

After a complaint from a citizen about these incidents, Mr. Cornelius was terminated from his position by Oneida Police Commission in December, 2005. In January, 2006, Mr. Cornelius filed an original action in the Oneida Tribal Judicial System Trial Court. The Oneida Police Commission brought a Motion to Dismiss based on Oneida Police Commission’s immuniiy from suit under Chapter 14 of the Oneida Ordinances. The trial court granted the motion. The matter was appealed to the Appellate Court. The Appellate Court va cated the decision to dismiss and remand *391 ed the matter to the Oneida Police Commission for further proceedings. After a full hearing on the record on December 9, 2006, the Oneida Police Commission affirmed its decision to terminate Mr. Cornelius’ employment.
That decision was appealed by Mr. Cornelius. On November 28, 2007, the Appellate Court remanded the case back to the Police Commission for further proceedings. The remand was based on the fact that the Oneida Police Commission’s decision relied on hearsay evidence from two witnesses who did not appear at the hearing. A supplemental hearing was held where one of the witnesses appeared and the other did not. The witness was available for questioning to all parties. The Oneida Police Commission affirmed its earlier decision, issuing a decision on February 18, 2008.
Mr. Cornelius timely appealed. We affirm the Oneida Police Department’s decision.
II. Issues
1.) Were Mr. Cornelius’ Due Process rights violated?
2.) Were there Procedural Irregularities that may have created harmful error?
3.) Did the Oneida Police Commission’s decision meet the seven requirements of the just cause standard in the Oneida Nation Law Enforcement Ordinance?
III. Analysis

A. Applicable law

The Oneida Tribe has adopted a Law Enforcement Ordinance found at Chapter 37 of the Oneida Tribal laws. Under the ordinance, the Oneida Police Commission has the power to “appoint, suspend, or remove the Police Chief of the Oneida Police Department.” Sec. 37.6-1 (a). Section 37.9 governs disciplinary actions against law enforcement officers. It provides for regular due process protections when law enforcement officers are being disciplined. The Commissioners are required to base their decisions regarding disciplinary action upon the “just cause” standard. Section 37.9-7 states:
37.9-7. Just Cause Standard Applied to Commission Deliberations. The Commissioners shall base their decisions regarding a disciplinary action upon the “just cause” standard.
(a) Whether the law enforcement officer could reasonably be expected to have had knowledge of the probable consequences of the alleged misconduct.
(b) Whether the procedure the law enforcement officer allegedly violated is reasonable.
(c) Whether the Police Chief, before filing charges against the law enforcement officer, made a reasonable effort to discover whether the law enforcement officer did, in fact, violate a procedure.
(d) Whether the investigation was fair and objective.
(e) Whether the Police Chief discovered substantial evidence that the law enforcement officer violated the procedure as described in the charges filed against the law enforcement officer.
(f) Whether the Police Chief is applying the rule or order fairly and without discrimination against the law enforcement officer.
(g) Whether the proposed discipline is reasonable as it relates to the seriousness of the alleged violation and to the law enforcement officer’s record of service with the Oneida Police Department.
There are several Standard Operating Procedures of the Oneida Police Department relevant to this proceeding:
*392 OPD-SOP 4.3, Miscellaneous Prohibited Acts, prohibits the following acts:
4.40 Falsifying records or giving false information to departments and/or employees responsible for record keeping.
4.41 Failure to provide accurate and complete information where such information is required by an authorized person.
4.55 Failure to exercise proper judgment.
OPD-SOP 4.5, Departmental Violations, provides that officers are subject to disciplinary action for the following violations of policy:
4.5.5 Knowingly making a false statement or entry in any departmental log, report, record, application, interview, or hearing.
4.5.18 Officer violating rules of conduct.
OPD-SOP 5, Rules of Conduct, provides that officers are not to commit any acts or omit any acts which constitute a violation of any of the rules of this section, including:
5.1 Unbecoming Conduct: Officers will conduct themselves at all times, both on and off duty, so as not to reflect disfavor on the Department. Conduct unbecoming an officer shall include that which brings the Department into disrepute or reflects discredit upon the officer as a member of the Department.
5.2 Immoral Conduct: Officers shall not participate in any incident involving moral turpitude which impairs their ability to perform as law enforcement officers or causes the Department to be brought into disrepute.
5.8 Unsatisfactory Performance: Officers shall maintain sufficient competency to properly perform their duties and assume responsibilities of their positions. Officers shall perform their duties and assume the responsibilities of their positions. Officers shall perform their duties in a manner which will maintain the highest standards of efficiency in carrying out the functions and objectives of the Department.

B. Discussion

1.) Were Mr. Cornelius’s Due Process rights violated?
No they were not. Mr. Cornelius has received adequate process. After some initial questions about where the matter should be heard, Oneida Police Commission gave Mr. Cornelius a hearing on the record with counsel.
The supplemental hearing cured any defects in the Oneida Police Commission decision based on Sec. 37.9-4(d). That section gives law enforcement officers the right to confront and cross-examine their accusers. While we would have preferred to see both of the Buckleys, Ms. Buckley’s appearance gave Mr. Cornelius the right to confront and cross-examine a key witness in the case.
Mr. Cornelius argues in his brief that the Oneida Police Commission was obligated to ask questions of Ms. Buckley or extract more testimony from her and its failure to do so somehow undermines its decision. We disagree. The purpose of the remand was to allow Mr. Cornelius the chance to exercise his rights under Sec. 37.9-4(d). The record is fairly well-developed and the facts surrounding the mis-deposited money are not in dispute. What is in dispute is the meaning that should be assigned to those facts. Before Ms. Buckley testified, no one knew whether she had important information that may have helped Mr. Cornelius. It appears there was no testimony which altered the Oneida Police Commission’s basic conclusions.
*393 2) Were There Procedural Irregularities That May Have Created Harmful Error?
No. Mr. Cornelius alleges several procedural irregularities that created harmful error.
First, Mr. Cornelius alleges the Oneida Police Commission had no authority to review events preceding its empowerment. More specifically, Mr. Cornelius is claiming since the money issue with the Buckleys occurred in 2002, before the Police Commission was created, it did not have the authority to consider the matter as grounds for Mr. Cornelius’s termination. As support, Mr. Cornelius cites Oneida Police Commission President David Webster’s letter of January 8, 2004 in which he states:
For clarity, the Commission cannot review matters that occurred prior to the Commission being empowered to act. That empowerment occurred on October 1, 2003, when the Oneida Law Enforcement Ordinance went back into effect. January 8, 2004 Letter from David Webster to OPD Employees, Exh. 7.
While the Oneida Police Commission appears to have acted inconsistently with Mr. Webster’s letter, we are not aware of any law which limits the Oneida Police Commission in the way Mr. Cornelius suggests. Mr. Cornelius’ prior conduct as a law enforcement officer is relevant to his status as the Chief of Police today. For example, what if it came to light that the Chief of Police was guilty of an unsolved felony crime from many years ago? It cannot be that because Mr. Webster wrote a letter that the Oneida Police Commission would have to ignore the earlier conduct and continue to employ the person.
Next, Mr. Cornelius claims the Oneida Police Commission incorrectly refused to decide motions submitted prior to the original hearing. Mr. Cornelius claims as part of its obligation to provide a hearing, Oneida Police Commission had an obligation to hear and decide Mr. Cornelius’s pre-hear-ing motions. Mr. Cornelius moved for dismissal of the charges against him and to be placed on administrative leave in accordance with Sec. 37.10-2 of the Law Enforcement Ordinance.
While it would have been helpful for the Oneida Police Commission to respond and formally grant or deny Mr. Cornelius’ motions, its inaction serves as a denial. We see no reason to disturb the Oneida Police Commission’s denial of the motions. It was reasonable for the Oneida Police Commission to deny the motion to dismiss because at the time there were valid claims that alleged Mr. Cornelius had engaged in serious misconduct. With respect to the request for administrative leave, it is at least plausible that Sec. 37.10-3 of the Law Enforcement Ordinance does not require administrative leave to continue past the investigation and discipline of the officer. By the time of the hearing, the investigation and discipline were completed.
Mr. Cornelius claims Ms. Skenan-dore, the citizen complainant, lacked standing to bring her complaint. Mr. Cornelius’ argument assumes standing is required. The Law Enforcement Ordinance simply allows citizen complaints; it does not require the citizen to have standing: “Any citizen may file charges or a complaint against an officer with the Chief of Police.” Sec. 37.9-l(e). There is no basis to add a standing requirement for a citizen complaint process which is not a suit in a court of law and where there is no statutory requirement the citizen establish an injury.
Mr. Cornelius next argues he was never provided with notice of his employee rights at any time during the investigation of *394 him. This requirement is found in the Oneida Poliee Department Standard Operating Procedures: 03-05-01.002, Policy 3.7. He claims this failure is a procedural irregularity which warrants reversal of the termination. We disagree.
Procedural irregularities are insufficient to overturn a termination if there is no harm to either party due to the irregularities. Dela Rosa v. Oneida Bingo & Casino, 1 O.N.R. 3-91-91 (95-EP0006, 9/14/95). Here, Mr. Cornelius has not even alleged any harm that may have come from the failure to be provided with notice of his employee rights. He has had counsel through most of the process and had apparently been represented.
3) Did the Oneida Police Commission’s decision meet the seven requirements of the just cause standard in the Oneida Nation Law Enforcement Ordinance?
Yes it did. Rather than go through each of the just cause factors listed in Sec. 37.9-7, we discuss the factors raised by Mr. Cornelius as not supporting the just cause finding. We assume Mr. Cornelius concedes the remaining factors weigh in favor of a finding of just cause.
Mr. Cornelius argues the investigation on theses issues were not fair and objective as required by Sec. 37.9-4<d). Mr. Cornelius argues there was a five-month gap between the receipt of the complaint and the completion of the independent investigation. Mr. Cornelius claims there was no basis for the delay and that sec. 3.10 of SOP 03-05-01.002 required the internal investigation to be completed within 30 days. We disagree with Mr. Cornelius’s contention.
Careful investigation can take time. Furthermore, Mr. Cornelius has not shown how he was harmed or prejudiced by the time taken to complete the investigation.
Next, Mr. Cornelius contends the investigation was tainted because the Oneida Police Commission provided specific questions to the investigator. While the investigation technique was unorthodox, Mr. Cornelius has not argued that the internal investigation was inaccurate or incomplete. Unusual techniques in and of themselves are not enough to show the investigation was unfair or biased.
Mr. Cornelius next claims there was not “substantial” evidence that his testimony in the Powless matter was untruthful. Sec. 37.9-7(e). However, Mr. Cornelius’s argument misses the mark. The Oneida Police Commission also relied on the appearance of dishonesty created by Mr. Cornelius and by his lack of judgment by involving himself in an investigation initiated by his friend, Ms. Bain. Mr. Cornelius does not dispute he created an appearance of dishonesty nor does he deny his personal involvement was a conflict of interest.
Mr- Cornelius claims the Oneida Police Commission violated Sec. 37.9—7(f) which requires it to apply its rales fairly and without discrimination. Mr. Cornelius argues his termination was flawed because the Oneida Police Commission decided on the termination and conducted the hearing. While a new hearing body would have been ideal, under the law it is not permitted. Neither the Oneida Personnel Commission nor the Oneida Tribal Judicial System Trial Court has the authority to hear Mr. Cornelius’ case as an original hearing body. The Law Enforcement Ordinance makes this clear. Furthermore, it is the law of this case that the Oneida Police Commission was to provide Mr. Cornelius’s grievance hearing. (See Cornelius v. OPC, — Am. Tribal Law-, 2006 WL 6469432 (10/20/2006)). The mere presence of the same Oneida Police Commissioners *395 is not enough to establish a violation of 37.9-7(0-
Though the money and testimony issues are enough by themselves to justify Mr. Cornelius’ removal, Mr. Cornelius had three more problem areas. These issues were investigated by a third party and noted by the Oneida Police Commission in its decision. First, Mr. Cornelius appeared to attempt to obtain tribal funds for his personal lawyer. Second, Mr. Cornelius hired an Elvis impersonator to perform at a show that never occurred, needlessly costing the Oneida Police Department $5,600. Third, Mr. Cornelius misrepresented the financial situation of his department to the Oneida Police Commission and caused the Oneida Police Commission’s budget to be $336,000 in the red for fiscal year 2005. These additional events sealed Mr. Cornelius’ fate and in combination with the money and testimony issues, amply justify Mr. Cornelius’ termination from employment.
Mr. Cornelius contends the punishment of termination from employment did not meet Sec. 37.9-7(g) which requires the proposed discipline to be “reasonable as it relates to the seriousness of the alleged violation and to the law enforcement officer’s record of service with the Oneida Police Department.”
 The Oneida Police Commission’s decision was reasonable. It explained its rationale by reasoning that as the Chief of Police, Mr. Cornelius was expected to meet high standards of conduct as described in the Standard Law Enforcement Code of Ethics and the Standard Operating Procedures of the Oneida Police Department. He was required to exercise judgment consistent with his position. The Oneida Police Commission noted even the appearance of dishonesty reflects poorly on the Oneida Police Department. Furthermore, his personal involvement in the Powless-Bain matter showed a lack of judgment.
Finally, in our view, because of the power vested in law enforcement officers they must be held to a very high standard of conduct. The Oneida Police Commission must have a reasonable amount of latitude to make judgments about the conduct of law enforcement officer and its effect on the justice system and public at large. The Oneida Police Commission’s decision to terminate employment was not unreasonable.
IV. Decision
The decision of the Oneida Police Commission is affirmed.